## THE CONSORT.

### UNITED STATES v. NATIONAL FIRE INS. CO. et al.

District Court, S. D. New York.

Feb. 19, 1931.

Robert E. Manley, Acting U. S. Atty., and Charles H. Wythe, Sp. Asst. U. S. Atty., both of New York City.

Bigham, Englar, Jones & Houston, of New York City (M. Detels and C. W. Harvey, both of New York City, of counsel), for respondents.

FRANK J. COLEMAN, District Judge.

There are presented only questions of fact, whether the cargo steamer Consort was seaworthy when she commenced her voyage and, if not, whether due diligence had been used to make her so. She left New York for La Pallice, France, on July 2, 1920, and within 18 hours four tubes of her starboard boiler were found blistered. When less than 2½ days out, other tubes in both boilers were found blistered, and the process continued until on the fifth day two of them were leaking so badly as to necessitate plugging. The condition grew worse with more tubes leaking and even bursting, until it became imperative to seek refuge in the Azores in order to make repairs and replenish the water supply. There it was found that 37 tubes out of 528 in both boilers required replacement.

Under the bills of lading the cargo owners were bound to contribute in general average to the expenses of seeking the refuge and making the repairs, provided due diligence had been used to render the ship seaworthy at the commencement of the voyage. The respondent insurance companies guaranteed this contribution, and the present suit is brought to recover it from them.

The trouble was caused either by fuel oil in the water supplied to the boilers or by scale formed on the tubes from minerals in the water. In either case the water in the tubes was kept from direct contact with certain areas of the walls of the tubes, with the result that those spots became superheated and the metal in them softened, permitting the pressure within to produce swellings or blisters which finally leaked or even burst. Libelant can recover only in case the cause of the trouble was fuel oil in the water, because if it was scale the ship was not seaworthy when she commenced the voyage. The blisters could not have been caused by scale within so short a time unless either the tubes were not clean when she started or seawater was admitted into the boilers, and the latter would not have occurred unless the condenser leaked. Either of these contingencies would have rendered the vessel unseaworthy at her departure, and should with due care have been discovered.

Libelant contends the blisters were caused by fuel oil which entered the water supply through a break in the coil of a fuel oil heater. The oil had to be heated before being supplied to the furnace, and this was accomplished by leading it through copper coil in a tank which was filled with live steam. The steam from this tank was not put through the ship's condenser, but was gradually condensed as it was led through a trap in the fire room, thence through an inspection box and finally mixed with the main condensate in the filter box. If a break occurred in the coil, the oil would mingle with the live steam in the tank and might to some extent be carried into the stream of water supplied to the boilers.

A break in the coil would be entirely consistent with due care to make the ship seaworthy, because, whether it occurred before or after the departure, it is undisputed that reasonable care would not have disclosed it except through the presence of oil in the trap or in the inspection tank. The ship was supplied with an additional heater and with ordinary care in the operation of the ship the oil would have been discovered and the defective heater discontinued before damage was done to the tubes. The damage which actually occurred and resulted in the general average loss was caused by negligence in operation, and not by negligence in making her seaworthy, if it was caused by fuel oil in the water.

Libelant had the burden of proving due care in regard to the ship's seaworthiness at her departure, and consequently had the burden of proving that the blistering was caused by fuel oil. Libelant, however, had previously advanced three entirely different explanations of the trouble, each of which had to be abandoned as untenable. In the statement of general average the adjuster reported that the defects which developed in the tubes were caused by the straining of the ship in the rough weather of the voyage; in the libel it is alleged that the trouble was caused by the splitting of the tubes and salting of the boiler water; and during much of the trial it was contended that it was lubricating oil from the circulator which got into the tubes. These three contentions are abandoned in libelant's brief as untenable, and reliance is placed solely on the fourth and last, which was first proposed in the midst of the trial.

Furthermore, the evidence to support libelant's final position is far from satisfactory. In the first place, there is no log entry which supports it and it was first mentioned in testimony at the trial more than ten years after the occurrence. In the second place, there is direct conflict between libelant's own witnesses as to whether fuel oil got into the tubes, and libelant concedes the untruthfulness in other respects of the officers who testified that it did.

The chief engineer testified that when they were two days out he discovered oil in the inspection tank indicating a leak in the coil of the fuel oil heater, and that he immediately discontinued that heater and substituted another. This was not mentioned in the log. He said the inspection tank was supposed to be examined every hour, that it was regularly examined every four hours, and that he himself examined it twice a day, so that even if a leak did develop in the heater, it probably did not long remain undiscovered. He testified he saw the oil in the first section of the filter box, and the fact that he did not see it in the other three sections may indicate that it had not reached them and consequently did not get into the tubes. When questioned in reference to the cause of the damage, he replied, "Well, it might have been caused by the fuel oil." The second assistant engineer testified that he had seen a break about three inches long in a coil taken from a fuel oil heater, but he does not state when this was and he may well have referred to a break which the rough log records as having occurred on July 15th after the ship had reached the Azores; and it is likely that the chief engineer also had that incident in mind when he testified that the break occurred within two or three days after departure from New York. The first assistant engineer, on the other hand, testified that the trouble was caused, not by fuel oil, but by lubricating oil from the circulator.

In support of the respondents' contention that the trouble was caused by scale in the tubes, there is the allegation in the libel that the boiler water became salted during the voyage from New York; the entry in the log on July 8th (when the first two plugs were put into the leaky tubes) "blew down the port boiler to get out any scale"; entries on July 11th that the condenser was leaking; the entry in the rough log on July 13th, the day the boat arrived at the Azores, that 28 ferrules of the main condenser were "leaking bad"; the entry in the rough log on July 14th that one tube in the condenser was plugged; and the entry on the rough log on July 21st while the boat was still at the Azores that four more tubes in the condenser were plugged. The testimony of respondents' experts, particularly Stanley's, as to the improbability of fuel oil causing the damage to the tubes and the probability that it was scale due to a leak of salt water in the condenser, seemed to me credible.

I am convinced that due care was not used before departure in the examination of the boiler tubes and of the condenser. Libelant is in the unfortunate position of insisting on the gross and almost unbelievable negligence of the ship's officers in her operation after she started, and at the same time contending that they used due care in preparation for the voyage. Without reviewing the numerous contradictions and improbabilities of their testimony, I find that they did not adequately test the condenser nor inspect the boiler tubes and that through this neglect scale was permitted to form and cause the blistering.

Libel dismissed.